UNITED STATES of America,
Appellee,

v.

Harvey Andrew REA, Appellant.

No. 01–2177.

United States Court of Appeals,
Eighth Circuit.

Submitted: Dec. 13, 2001.

Filed: Aug. 26, 2002.

James E. Ostgard, argued, Minneapolis, MN, for appellant.

D. Gerald Wilhelm, argued, Minneapolis, MN, for appellee.

Before: HANSEN,[1] Chief Judge, HEANEY and MURPHY, Circuit Judges.

HANSEN, Circuit Judge.

Harvey Rea appeals his conviction for conspiracy to commit arson in violation of 18 U.S.C. §§ 844(i) and 371. Rea argues that the district court erred in denying his motion to dismiss for prior jeopardy. Rea also argues that the district court erred in reinstating his conviction because even after the evidentiary hearing, the evidence

1. The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

did not demonstrate that the church annex he damaged was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," an element of 18 U.S.C. § 844(i) (1994). We affirm in part and reverse in part..

## I.

This is the third time that Rea has been before this court. We have articulated the facts giving rise to his conviction on two prior occasions, *see United States v. Rea*, 169 F.3d 1111 (8th Cir.1998) (*Rea I*), vacated by 530 U.S. 1201, 120 S.Ct. 2193, 147 L.Ed.2d 230 (2000); *United States v. Rea*, 223 F.3d 741 (8th Cir.2000) (*Rea II*), and we see no need to discuss them at any great length here. To summarize, in the middle of the night, while in the process of stealing computers from the St. James A.M.E. Church annex in Minneapolis, Minnesota, Rea and his brother, Jeremy, set fire to the annex to destroy any incriminating evidence that they might have left behind. There is nothing in the record which indicates that Rea acted with any racial or religious animus in deciding to burglarize and burn the church annex. The authorities apprehended Rea, and he entered a conditional guilty plea.

The conditional plea agreement provided that Rea would plead guilty to conspiracy to commit arson, in violation of 18 U.S.C. §§ 371 and 844(i), but that he "reserved the right to appeal the district court's denial of his motions to dismiss the indictment for lack of subject matter jurisdiction or, in the alternative, to enter a judgment of acquittal." *Rea I*, 169 F.3d at 1112. In his first appeal, Rea argued that the district court lacked jurisdiction to enter a judgment of conviction because the annex was neither used in nor affected interstate commerce. We rejected Rea's jurisdictional argument, noting that "section 844(i)'s 'interstate commerce' requirement, while jurisdictional in nature, is merely an element of the offense, not a prerequisite

to subject matter jurisdiction." *Id.* at 1113. We then construed Rea's jurisdictional argument to be "that the facts to which he pleaded guilty [were] not sufficient to demonstrate that the Church annex was used in interstate commerce or in any activity affecting interstate commerce." *Id.* At the time of Rea's first appeal, we had concluded that " '[i]n enacting section 844(i), Congress intended to exercise its full power under the Commerce Clause' " and that " 'section 844(i) reaches arson of any property having even a *de minimis* connection to interstate commerce.' " *Id.* (quoting *United States v. Ryan*, 41 F.3d 361, 364 (8th Cir.1994) (en banc), *cert. denied*, 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995)). This standard was generally easily satisfied, and we concluded that there was a sufficient factual basis supporting the guilty plea and sustained Rea's conviction. *Rea I*, 169 F.3d at 1113. We reversed and remanded the sentencing order to allow the district court to reconsider the restitution payment schedule. *Id.* at 1114.

Before the district court could reconsider the restitution order, the Supreme Court granted Rea's petition for writ of certiorari. *Rea v. United States*, 530 U.S. 1201, 120 S.Ct. 2193, 147 L.Ed.2d 230 (2000). The Court vacated our judgment in *Rea I* and remanded the case back to us for further consideration in light of *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). *Jones* held that an owner-occupied residence not used for any commercial purpose did not fall within the scope of 18 U.S.C. § 844(i). *Jones*, 529 U.S. at 852, 120 S.Ct. 1904. On remand, we recognized that *Jones* "substantially changed the law of the Eighth Circuit regarding the reach of § 844(i)." *Rea II*, 223 F.3d at 743. "[B]ecause of insufficient fact finding at the district court level on the issue of the Church annex's commercial connection, we [were] unable

to determine from the record whether the Church annex [met] the requirements mandated by *Jones.*" *Id.* at 744. Therefore, we reversed Rea's conviction and remanded the case to the district court to determine whether there was a sufficient factual basis to support the plea agreement.

On remand, Rea argued that the Double Jeopardy Clause forbade any further proceedings in his case. The district court rejected Rea's argument and held an evidentiary hearing concerning the church annex's relationship to and effect on interstate commerce. The district court concluded that there was a sufficient nexus between the annex and interstate commerce to support the guilty plea and reinstated Rea's conviction. *United States v. Rea,* No. 97–235, 2001 WL 407238 (D.Minn. April 18, 2001). Rea timely filed a notice of appeal and now presents both the double jeopardy and interstate commerce arguments for us to resolve.

## II.

 We review de novo the district court's denial of Rea's motion to dismiss the indictment on double jeopardy grounds. *United States v. Bennett,* 44 F.3d 1364, 1368 (8th Cir.), *cert. denied,* 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282 (1995). The Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Fifth Amendment guarantee against double jeopardy consists of three constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted), *overruled in part by Alabama v. Smith,* 490 U.S.

794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

 Although the Double Jeopardy Clause bars successive prosecutions, it "is not an absolute bar to successive trials." *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). The constitutional prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside because of trial error in the proceedings leading to conviction. *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *United States v. Ball,* 163 U.S. 662, 671–72, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Because the Fifth Amendment protects defendants from a second or double jeopardy only after the initial jeopardy has attached and terminated, *Satter v. Leapley,* 977 F.2d 1259, 1263 (8th Cir.1992), it is implicit in the rule permitting retrial after a reversal of a conviction for trial error that jeopardy has never been terminated but instead continues, *Justices of Boston,* 466 U.S. at 308, 104 S.Ct. 1805. The "continuing jeopardy" principle applies where the "criminal proceedings against an accused have not run their full course." *Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). The rule permitting further proceedings after reversal of a conviction advances the "sound administration of justice." *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Such a rule balances society's interest in punishing the criminal and the criminal's interest in receiving fair process. *See Id.* (stating that it is "doubtful that appellate courts would be as zealous" in correcting error "if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution").

The Fifth Amendment does bar, however, successive prosecutions for the same offense following an unreversed conviction or a judgment of acquittal, whether express or implied. *Justices of Boston,* 466 U.S. at 308–09, 104 S.Ct. 1805. These events are said to terminate the original jeopardy, thereby precluding the initiation of a second or double jeopardy. *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event . . . which terminates the original jeopardy."). Likewise, an unreversed determination by a reviewing court that the evidence was legally insufficient to sustain the conviction terminates the initial jeopardy and precludes any further prosecution. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). This rule is justified on the grounds that "[a]n appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is, for double jeopardy purposes, the equivalent of an acquittal." *Satter,* 977 F.2d at 1263. When a reviewing court determines that there is insufficient evidence to support a conviction, then it has decided as a matter of law that the case should not have been submitted to a jury, and that no jury could have properly returned a guilty verdict. *Burks,* 437 U.S. at 16, 98 S.Ct. 2141. As such, the only just remedy is direction for judgment of acquittal. *Id.* at 18, 98 S.Ct. 2141.

Rea argues that jeopardy attached at his change of plea hearing held on November 12, 1997. He further argues that because the parties had agreed to a bench trial, and because he had filed a motion to dismiss the indictment or in the alternative a motion to acquit, then the change of plea hearing was, in substance, a stipulated trial of guilt vel non to the district court. He concludes that our decision in *Rea II* to reverse his conviction and remand to the district court for further fact-finding was therefore, in substance, a determination that there was insufficient evidence to sustain the conviction, which pursuant to *Burks* terminated jeopardy, forbade any further evidentiary hearings, and entitled him to a judgment of acquittal. We assume, without deciding, that jeopardy attached when the district court accepted the guilty plea. *See Bally v. Kemna,* 65 F.3d 104, 108 (8th Cir.1995), *cert. denied,* 516 U.S. 1118, 116 S.Ct. 923, 133 L.Ed.2d 852 (1996).

The premise of Rea's argument is that the change of plea hearing was really a trial on the merits. We disagree. Initially, we note that there is no evidence indicating that Rea and the government ever agreed to a bench trial on the interstate commerce element of the federal arson statute. In fact, Rea and the government entered into a "plea agreement . . . pursuant to Fed.R.Crim.Proc. 11(e)(1)(c)." (D.Ct. Docket Entry 46.) At the hearing, the district court asked Rea's counsel and government counsel if they were there for the purpose of conducting a change of plea hearing, to which Rea's counsel responded, "Yes, Your Honor." (Tr. 11/12/97 at 2.) After the government recited the agreement to the court, Rea's counsel stated that he had advised Rea not to enter into a plea agreement but instead to plead not guilty and "have a trial," (*Id.* at 8) implying that the change of plea hearing was not a trial. Furthermore, during this hearing, the district court asked Rea on several occasions whether he understood that he could withdraw his plea of guilty and proceed to trial, which was scheduled for the following Monday. (*Id.* at 9, 10, 14, 15, 16.) On each occasion, Rea responded in the affirmative, (*Id.*) implying that he understood that this was a change of plea hearing and that he was foregoing his trial rights. The district court also asked Rea whether he understood that if the court

accepted his plea of guilty that Rea would "not have a trial of any kind, whether or not that's a jury trial or a court trial." (*Id.* at 15.) Rea responded, "[y]es." (*Id.*) The mere fact that the government referred to evidence regarding the annex's nexus to interstate commerce does not transform what was otherwise a Rule 11 change of plea hearing into a stipulated trial on the merits. *See United States v. Carr,* 271 F.3d 172, 179 (4th Cir.2001) (stating that it is well "settled that the judge may establish the factual basis for the guilty plea through questioning in open court, documents, or other evidence in the record"). Nor did Rea's motion to dismiss the indictment require that the district court rule on Rea's guilt vel non. In sum, there is nothing in the record which leads us to conclude that the district court held a stipulated trial on the merits as opposed to a change of plea hearing pursuant to Federal Rule of Criminal Procedure 11.

 Because Rea pleaded guilty to this offense, we conclude that the reversal in *Rea II* was for trial error, that the original jeopardy has never been terminated, and that the evidentiary hearing after remand was merely part of a continuing jeopardy. In *Burks,* after a jury found the defendant guilty of the charged crime, he appealed the district court's denial of his motion to acquit, squarely presenting to the reviewing court the issue of whether there was sufficient evidence to support the conviction. *Burks,* 437 U.S. at 5, 98 S.Ct. 2141. Subsequent cases have narrowly limited *Burks,* concluding that its rule is strictly "limited to reversals that *necessarily* establish the criminal defendant's lack of criminal culpability." *Parker v. Norris,* 64 F.3d 1178, 1181 (8th Cir.1995) (internal quotation omitted) (emphasis added), *cert. denied,* 516 U.S. 1095, 116 S.Ct. 820, 133 L.Ed.2d 764 (1996). Our review in *Rea II* did not necessarily establish Rea's lack of criminal culpability. Our review in *Rea II* was limited to the question of whether

"[u]nder Rule 11(f) of the Federal Rules of Criminal Procedure, [the district court made] an inquiry sufficient to satisfy itself that a factual basis exist[ed] for the guilty plea." *United States v. Wicker,* 80 F.3d 263, 267 (8th Cir.1996). A factual basis supporting a guilty plea exists where there is sufficient evidence to allow the district court to be subjectively satisfied that the defendant committed the offense. *Id.; United States v. Mitchell,* 104 F.3d 649, 652 (4th Cir.1997). Accordingly, in *Rea II* we merely determined that in light of the more stringent test announced in *Jones,* the district court failed to compile a record sufficient to comport with the Rule 11(f) requirement that there be a factual basis supporting the plea agreement. Our reversal of Rea's conviction in *Rea II,* therefore, was for trial error and did not purport to address the issue of whether Rea was entitled to a judgment of acquittal based on insufficiency of the evidence. *See Parker,* 64 F.3d at 1182 (" 'In determining whether a reversal was based on evidentiary sufficiency [for double jeopardy purposes], we must rely on the reasons of the reversing court, whether state or federal.' ") (quoting *DuBois v. Lockhart,* 859 F.2d 1314, 1318 (8th Cir.1988)). Reversal for trial error simply continues the jeopardy which we assume attached when the district court accepted Rea's conditional guilty plea. Because the first jeopardy has never been terminated, the district court's evidentiary hearing after remand in *Rea II* did not infringe upon Rea's Fifth Amendment rights. *See Richardson,* 468 U.S. at 325, 104 S.Ct. 3081; *Satter,* 977 F.2d at 1263 (stating that retrial is not barred where first jeopardy has not been terminated and retrial is merely a continuing jeopardy).

Furthermore, we are troubled by the inequity of Rea's position. Rea pleaded guilty several days before his trial was to commence. The government introduced

limited evidence to satisfy the dictates of Rule 11. *See Mitchell,* 104 F.3d at 652 ("[T]o comply with Rule 11(f), a district court need not replicate the trial that the parties sought to avoid."). Rea then argued on remand that the government should have introduced more evidence in the first instance because the change of plea hearing was, in substance, the trial he had obviously foregone. This is not the kind of governmental overreaching that the Double Jeopardy Clause was meant to prevent. *Burks,* 437 U.S. at 16, 98 S.Ct. 2141 (noting that Double Jeopardy is implicated after the government has had a full and fair opportunity to present all the evidence it could assemble); *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) ("[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect."). The inequity is compounded where, as here, the plea agreement itself provided that if Rea prevailed on his jurisdictional argument either before the district court or before our court that he would "be allowed to withdraw from [the plea] agreement pursuant to Fed.R.Crim.P. 11(a)(2)" (D.Ct. Docket Entry 46), not that he was entitled to acquittal.

■ Accordingly, we conclude that "[t]he Double Jeopardy Clause is not violated when a criminal defendant pleads guilty while reserving his right to appeal, prevails on appeal, and consequently must either re-plead, endure further pre-trial proceedings, or go to trial." *United States v. Martinez–Gaytan,* 213 F.3d 890, 893 n. 3 (5th Cir.2000). *See, e.g., Carr,* 271 F.3d at 181 (concluding that when defendant pleaded guilty to arson in violation of section 844(i) but the record was insufficient for the district court to find a factual basis for the guilty plea, then the appropriate

remedy was remand to the district court for further proceedings); *United States v. Johnson,* 246 F.3d 749, 752 (5th Cir.2001) (vacating guilty plea and remanding for further proceedings where there was an insufficient factual basis supporting guilty plea to violation of section 844(i)); *United States v. Tunning,* 69 F.3d 107, 115 (6th Cir.1995) ("[W]here the error involves a problem with the district court's state of mind, for example where ... the record does not include sufficient information from which the district court could find a factual basis for the guilty plea, the appropriate remedy is to remand to the district court for further proceedings to create the appropriate record."); *United States v. Stewart,* 739 F.2d 1379, 1381 (8th Cir.1984) (stating that after defendant pleaded guilty but "the record [was] devoid of any evidence" on an element of the offense, then the appropriate remedy was to "vacate the judgment of the district court ... and remand for further proceedings to give the government an opportunity in an evidentiary hearing to demonstrate" a sufficient factual basis for each element of the offense); *United States v. Hilyer,* 543 F.2d 41, 43 (8th Cir.1976) (holding that where the defendant pleaded guilty to interstate transportation of forged securities but there was an insufficient factual basis to support the interstate commerce element of the charged crime, then the appropriate remedy was remand to allow re-pleading).

### III.

■ Title 18 § 844(i) of the United States Code makes it a crime to "maliciously damage[ ] or destroy[ ] ... by means of fire or an explosive, any building ... or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i) (1994). Rea argues that even after the district court's evidentiary hearing, the

government has presented insufficient evidence to establish the required nexus between the church annex and interstate commerce. Because Rea entered a guilty plea pursuant to Federal Rule of Criminal Procedure 11, we must determine whether there was a sufficient factual basis to support the guilty plea. *See Wicker*, 80 F.3d at 267. A factual basis exists if there is sufficient evidence "for the court to reasonably determine that the defendant committed the offense." *Id.* (internal quotations omitted).

As aforementioned, *Jones* substantially changed the law of our circuit regarding the scope of section 844(i). *United States v. Beck*, 250 F.3d 1163, 1165 (8th Cir.2001). Prior to *Jones*, we had concluded that because Congress exercised its full commerce powers in enacting section 844(i), the arson of property having only de minimis connections with interstate commerce fell within the statute's purview. *Rea II*, 223 F.3d at 743. Contrary to our view, the *Jones* Court concluded that Congress did not intend to exercise its full power under the Commerce Clause in enacting § 844(i). *Jones*, 529 U.S. at 854–55, 120 S.Ct. 1904; *see also Beck*, 250 F.3d at 1165 (stating that "the qualifying words 'used in,' as used in section 844(i), constitute a limitation on the reach of the federal arson statute rather than the expression of Congress' intent to invoke its full authority under the Commerce Clause" (internal quotation omitted)). The Court reasoned that the qualifying words "used in" require that the damaged property must have been actively employed in interstate commerce or in an activity affecting interstate commerce. *Id.* at 855, 120 S.Ct. 1904. The Court then vacated Jones's conviction under section 844(i) and held that arson of an owner-occupied residence not used in any commercial activity does not fall within the scope of the statute. *Id.* at 859, 120 S.Ct. 1904.

*Jones* did not limit the scope of section 844(i) to the protection of businesses only. *Id.* at 855, 120 S.Ct. 1904 (stating that the statute covers "any building"); *see also Russell v. United States*, 471 U.S. 858, 862, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (holding that the arson of residential rental property fell within the scope of section 844(i)). Indeed, the Court has indicated that the statutory history of section 844(i) suggests that Congress intended it to encompass all commercial property, including, among other things, schools, police stations, and places of worship. *See Russell*, 471 U.S. at 860–61, 105 S.Ct. 2455. The fact that a building is a church, without more, however, does not bring it within the ambit of section 844(1). *Carr*, 271 F.3d at 179; *Rea II*, 223 F.3d at 743–44. The "proper inquiry" in deciding whether the arson of this church annex falls within the scope of section 844(i), " 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.' " *Jones*, 529 U.S. at 854, 120 S.Ct. 1904 (quoting *United States v. Ryan*, 9 F.3d 660, 675 (8th Cir.1993) (Arnold, C.J., concurring in part and dissenting in part)).

In looking at the function of the building at the time of the fire, "the damaged ... property must itself have been used in commerce or in an activity affecting commerce." *Jones*, 529 U.S. at 854, 120 S.Ct. 1904 (internal quotations omitted); *see also United States v. Ryan*, 227 F.3d 1058, 1061 (8th Cir.2000). "That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones*, 529 U.S. at 855, 120 S.Ct. 1904. For example, the *Jones* Court concluded that the use of a residence as collateral to secure a mortgage from an out-of-state lender, the fact that a residence was insured by an

out-of-state insurance provider, and the receipt of natural gas from an out-of-state source were mere passive connections and not active commercial "uses" in or with effects on interstate commerce. *Id.* at 856, 120 S.Ct. 1904. Likewise, some facts upon which the government relies here are not active "uses" or functions but only passive connections to commerce not sufficient to bring the annex within the operation of the statute. Although the annex is owned by the A.M.E. Church and not the local congregation, mere ownership of property by an out-of-state entity does not constitute active employment in commerce. *See Ryan,* 227 F.3d at 1063 ("It can hardly be said that the mere status of being owned . . . constitutes active employment." (internal quotation and citation omitted)). Likewise, the mere purchase of insurance for the annex and the church pastor is not "active employment." *United States v. Voss,* 787 F.2d 393, 397 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). Other facts persuade us, however, that at the time of the fire, the annex was actively employed in commerce or in commerce affecting activities. No worship services were performed in the annex, but during the summer of 1997, at the time of the fire, the congregation used the annex for weekly Sunday school classes; for trustee, steward board, departmental, and other meetings; and for youth tutoring programs. As such, the annex functioned as part of the church and was actively "used in" commerce. *See United States v. Odom,* 252 F.3d 1289, 1294 (11th Cir.) ("The . . . 'commerce' of a church involves the solicitation and receipts of donations, and the provision of spiritual, social, community, educational . . . and other charitable services."), *cert. denied,* 533 U.S. 960, 121 S.Ct. 2614, 150 L.Ed.2d 768 (2001); *United States v. Grassie,* 237 F.3d 1199, 1204 (10th Cir.) (stating that church buildings are used for a broad range of educational, recreational, and fi-nancial activities), *cert. denied,* 533 U.S. 960, 121 S.Ct. 2614, 150 L.Ed.2d 768 (2001).

 After determining that at the time of the fire the annex was actively employed for commercial purposes, we must next determine whether or not the aforementioned functions—the congregation's use of the annex as a Sunday school, meeting house, and tutoring center—affect *"interstate or foreign commerce,"* 18 U.S.C. § 844(i) (1994) (emphasis added). *See Odom,* 252 F.3d at 1295 ("Accordingly, the evidence proving that a church building is used in or affects interstate commerce must relate to these activities [i.e., the building's commercial functions]."). The text of the statute suggests two methods by which a building can fall within section 844(i)'s interstate commerce element: the commercial function of the property could directly inject it into the stream of interstate and/or foreign commerce and/or the building's functions could cause it to be used in an activity affecting interstate commerce. The *Jones* court examined only the last of these possibilities, *see Jones,* 529 U.S. at 854, 120 S.Ct. 1904 (stating· that after determining the functions of a building, the next inquiry is whether those functions affect interstate commerce), but we examine each possibility in turn, ultimately concluding that the church annex is neither directly connected to or in the stream of interstate commerce, nor is it used in an activity that affects interstate commerce.

Examples of property with uses that directly implicate interstate commerce include residential rental property and hotels. *See Russell,* 471 U.S. at 862, 105 S.Ct. 2455 (stating that the "rental of an apartment unit is merely an element of a much broader commercial market in rental properties"); *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d

626 (1995) (citing *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 256, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), for the proposition that Congress may regulate the channels of interstate commerce). The annex's functions do not place it directly in the stream of interstate commerce. The annex does not operate as part of a larger commercial market for Sunday school services, meeting and convention facilities, or tutoring programs. Nor does the annex serve as a channel of interstate commerce in the same way a hotel would. The church annex is a small building located approximately three to four feet from the main church building. It can be entered only through an exterior door, as there is no physical connection between the main building and the annex. The steward board and trustees met in the annex, but the record does not reflect the composition of these groups or whether any of them were interstate travelers. The Church's Presiding Elders traveled interstate to hold meetings in the main building, but they never held meetings in the annex because Church law required that the meetings be initiated with a devotional opening that could be performed only in the main building. The record does not indicate whether any other interstate travelers contributed to, performed, or received any services in the annex. As such, we conclude that there is not a sufficient factual basis to conclude that the annex was used directly in the stream of interstate or foreign commerce.

We also conclude that there is not a sufficient factual basis to conclude that the annex's commercial functions affected interstate commerce within the meaning of section 844(i). In similar circumstances, the Eleventh Circuit, in *Odom,* concluded that a church which (1) received donations from out-of-state donors, (2) utilized Bibles and other books purchased from an out-of-state firm, and (3) indirectly contributed money to an out-of-state religious organi-

zation through its membership in the in-state church organization had only "passive," "minimal," and "indirect" effects on interstate commerce and, as such, fell outside the purview of section 844(i). *Odom,* 252 F.3d at 1296–97. We find the reasoning of the *Odom* Court persuasive and conclude that its reasoning applies with greater force in this case.

The locus of the St. James' congregation's activity occurred in the main church building—the annex was used only for limited purposes. Section 844(i) provides, however, that it is the building that is actually damaged that must be used in interstate commerce or in any activity affecting interstate commerce. The main church building had only minimal connections to interstate commerce; the annex's effect on interstate commerce is even more limited. The congregation's use of the annex as a Sunday school and after-school tutoring program caused the annex to have fleeting effects on interstate commerce. The congregation purchased supplies from out of state, including reading materials from a publishing house in Tennessee to operate its Sunday school and computers to facilitate its tutoring program. Money flowed in and out of the Church's coffers to and from out-of-state locales. No evidence demonstrates, however, that any money was collected in the annex. Moreover, no evidence indicates that any financial transactions occurred in the annex. The church's financial custodian worked out of her home because the Church had no office for her. Thus, checks were written and sent from the custodian's residence and not the church property. "If [these] connections sufficed to trigger § 844(i), the statute's limiting language, 'used in' any commerce-affecting activity, would have no office." *Jones,* 529 U.S. at 857, 120 S.Ct. 1904. Such a reading would blur the "distinction between what is truly national and what is truly local." *Lopez,* 514 U.S. at

567–68, 115 S.Ct. 1624; *see Jones,* 529 U.S. at 858, 120 S.Ct. 1904 ("[A]rson is a paradigmatic common-law state crime.").

 *Jones* specifically instructed that absent a clear message to the contrary, Congress will not be deemed to have changed the federal-state balance in the prosecution of crimes, and that *Lopez* should guide our construction of section 844(i). *See Jones,* 529 U.S. at 858, 120 S.Ct. 1904 (stating that "[g]iven the concerns brought to the fore in *Lopez,* it is appropriate to avoid the constitutional question that would arise were [the Court] to read § 844(i) to render ... traditionally local criminal conduct ... a matter for federal enforcement" (internal quotation omitted)); *cf. United States v. Melina,* 101 F.3d 567, 573 (8th Cir.1996) ("[W]e do not find *Lopez's* analysis applicable due to the § 844(i)'s express jurisdictional element."). Thus, concluding that the annex does not fall within the ambit of section 844(i) "is in harmony with the guiding principle that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" *Jones,* 529 U.S. at 857, 120 S.Ct. 1904 (quoting *United States ex rel. Attorney Gen. v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). Our conclusion is also consistent with the rule of lenity, which requires "that ambiguity concerning the ambit of criminal statutes should be resolved in favor of the defendant." *Jones,* 529 U.S. at 858, 120 S.Ct. 1904. In light of these principles of statutory construction, we conclude that there was not a sufficient factual basis to support the conclusion that the church annex was used in interstate commerce or in any activity affecting interstate commerce.

**IV.**

We conclude that the district court did not err in denying Rea's motion to dismiss on Double Jeopardy grounds. We also conclude that there was an insufficient factual basis to support the tendered conditional plea. Accordingly we vacate Rea's plea and remand this case to the district court for further proceedings consistent with this opinion.