# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3638
_____

United States of America

*Plaintiff - Appellee*

v.

Kurt Harrington, also known as Chi, also known as Jamaica

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 14, 2021
Filed: May 18, 2021

_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After Kurt Harrington obtained habeas relief from two life sentences he was serving, the district court[1] permitted the Government to retry him on the elements triggering those life sentences that were part of two of the counts on which he was

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

previously convicted. Harrington moved to dismiss, arguing that a retrial would violate his rights under the Double Jeopardy Clause. The district court denied this motion. Harrington appeals, and we affirm.

## I.

On October 5, 2008, Joseph Van Hoe was found dead inside his residence in Iowa City, Iowa. His autopsy determined that he died of heroin and alcohol intoxication. Law enforcement later learned that Harrington had distributed heroin to an intermediary who in turn had distributed it to Van Hoe the day of his death. In 2009, Harrington was charged in a second superseding indictment with seven counts, including one count of conspiracy to distribute heroin resulting in death ("Count One"), *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 846 (2009), and one count of distribution of heroin resulting in death ("Count Seven"), *see* 18 U.S.C. § 2 (2009); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (2009).

Harrington pleaded guilty to two of the other counts against him, but he chose to go to trial on the remaining five counts, including Counts One and Seven. His codefendant, James Faulkner, also went to trial on Count One, among other counts. Under our precedent at the time, to prove the resulting-in-death elements of Counts One and Seven, the Government had to establish that the heroin distributed by Harrington was a "contributing cause" of Van Hoe's death. *See, e.g.*, *United States v. Monnier*, 412 F.3d 859, 862 (8th Cir. 2005), *abrogated in relevant part by Burrage v. United States*, 571 U.S. 204, 208, 217-19 (2014). So instructed, the jury returned a special verdict finding Faulkner and Harrington guilty of the respective counts against them, specifically and separately finding them guilty of the resulting-in-death elements of Count One (in both defendants' cases) and Count Seven (in Harrington's case).

The district court then sentenced Harrington to mandatory life imprisonment on each of Counts One and Seven and to 360 months' imprisonment on each of the other five counts against him, with each sentence to run concurrently. Harrington's

mandatory life-imprisonment terms on Counts One and Seven were triggered in part by the special guilty verdict on the resulting-in-death elements of those counts. *See United States v. Harrington*, 617 F.3d 1063, 1064 (8th Cir. 2010) (per curiam). On direct appeal, we affirmed Harrington's sentence. *See id.* at 1064-65.

In 2014, the Supreme Court held that the resulting-in-death element found in Harrington's statutes of conviction for Counts One and Seven required "but-for causality," rejecting the "'contributing cause' test" we had previously employed. *See Burrage*, 571 U.S. at 210-12, 217-19. In 2017, Harrington filed a habeas petition under 28 U.S.C § 2241 in the Eastern District of Kentucky (the district where he was imprisoned), challenging as illegal under *Burrage* his life sentences on Counts One and Seven. *See Harrington v. Ormond*, 900 F.3d 246, 248 (6th Cir. 2018). In response, the Government acknowledged that, in a separate habeas case brought by Faulkner in the Southern District of Indiana in which Faulkner invoked *Burrage* to challenge the life sentence he received on Count One, the government attorneys there had stipulated that the evidence presented at trial was insufficient under *Burrage* to prove the resulting-in-death element of that count. The Government then stated that, although it believed the stipulation in Faulkner's habeas case was mistaken, it would "abide by the stipulation" in Harrington's habeas case. Accordingly, the Government "agree[d] that Harrington's life sentence under Counts 1 and 7 should be vacated" and requested that the case be returned to the district court for resentencing. The Government and Harrington then jointly submitted an "Agreed Order and Judgment," which the Kentucky district court entered. The Agreed Order and Judgment stated that Harrington's "convictions and sentences of life imprisonment on Count[s] 1 and 7 . . . are hereby vacated."

Harrington's case was then reopened in the district court. Harrington and the Government disagreed about the effect of the Agreed Order and Judgment. The district court resolved this dispute by concluding that, although the Agreed Order and Judgment stated that Harrington's "convictions" as well as sentences on Counts One and Seven were vacated, this was a "mistake," and only the sentences on those

counts were vacated. The district court then stated that the Government could retry Harrington on the resulting-in-death elements of those counts under *Burrage*.

Harrington opposed retrial and moved to dismiss on the basis that retrial would violate the Double Jeopardy Clause. The district court denied this motion, rejecting Harrington's double-jeopardy argument. Harrington appeals this denial.

## II.

Before addressing the merits, we must first "determine whether we have jurisdiction over this interlocutory appeal." *See United States v. Ledon*, 49 F.3d 457, 459 (8th Cir. 1995). "The denial of a motion to dismiss on double jeopardy grounds may be raised in an interlocutory appeal." *United States v. Brown*, 926 F.2d 779, 781 (8th Cir. 1991) (per curiam) (citing *Abney v. United States*, 431 U.S. 651, 662 (1977)). We have jurisdiction over such an appeal, however, only if "the defendant has raised a colorable double jeopardy claim." *United States v. Bearden*, 265 F.3d 732, 734 (8th Cir. 2001). Such a claim requires a colorable showing of the elements of double jeopardy: previous jeopardy and the threat of repeated jeopardy. *United States v. Kress*, 58 F.3d 370, 373 (8th Cir. 1995).

To aid our determination of whether a double-jeopardy claim is colorable, we have asked the district courts, when denying a double-jeopardy-based motion to dismiss, "to make written findings on the issue of whether the motion is frivolous or non-frivolous." *United States v. Dixon*, 913 F.2d 1305, 1309 (8th Cir. 1990) (citing *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir. 1982) (en banc) (per curiam)). In the absence of such findings, we will look to the record to ascertain whether the claim is colorable. *See, e.g.*, *id.* Here, the district court did not make a written finding as to whether Harrington's double-jeopardy claim is colorable, so we look to the record to determine whether it is.

In doing so, we conclude that Harrington's double-jeopardy claim is colorable. First, Harrington previously was placed in jeopardy on the resulting-in-

death elements of Counts One and Seven because he was tried before a jury that had been empaneled and sworn at the start of the trial on these counts. *See id.* ("[T]he record clearly shows that jeopardy had attached in the first trial because the jury had been empaneled and sworn."). Second, though we conclude below that Harrington's double-jeopardy claim is "ultimately unsuccessful," it is not frivolous. *See Ledon*, 49 F.3d at 460. Although Harrington's claim fails under recent circuit precedent and the persuasive authorities on which that precedent tacitly relied, Harrington makes a nonfrivolous argument to distinguish those authorities. The nonfrivolous nature of Harrington's claim is borne out by the district court's "thorough" analysis of it in its seventeen-page opinion and order denying the motion to dismiss. *See Kress*, 58 F.3d at 373 (finding a double-jeopardy claim colorable because the district court rejected it only after considering a nineteen-page report and recommendation analyzing the claim and issuing a five-page opinion and order adopting that report and recommendation). Thus, we have jurisdiction over this appeal.

## III.

Accordingly, we turn to the merits of the only issue before us now, which is whether Harrington's retrial on the resulting-in-death elements of Counts One and Seven would violate the Double Jeopardy Clause. Reviewing this question *de novo*, *Bearden*, 265 F.3d at 735, we conclude that retrial will not violate the Double Jeopardy Clause.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'" *Jones v. Thomas*, 491 U.S. 376, 380 (1989) (quoting U.S. Const. amend. V). The Double Jeopardy Clause prohibits "successive prosecutions for the same offense following," among other things, "a judgment of acquittal." *United States v. Rea*, 300 F.3d 952, 957 (8th Cir. 2002). When a conviction is set aside on appellate or habeas review, the Double Jeopardy Clause may bar successive prosecution depending on the reason why the conviction was set aside. *Lockhart v. Nelson*, 488 U.S. 33, 38-40 (1988). When a defendant "succeeds in getting his first conviction

set aside because of trial error in the proceedings leading to conviction," the Double Jeopardy Clause does not prohibit successive prosecution because that is not equivalent to a judgment of acquittal. *See Rea*, 300 F.3d at 956-57. By contrast, if "a reviewing court determines that there is insufficient evidence to support a conviction," that can be "'the equivalent of an acquittal,'" in which case the Double Jeopardy Clause prohibits successive prosecution. *See id.* at 957 (quoting *Satter v. Leapley*, 977 F.2d 1259, 1263 (8th Cir. 1992)).

But not every instance in which a conviction is set aside due to insufficient evidence is the equivalent of an acquittal. The setting aside of a conviction on this basis is the equivalent of an acquittal when the evidence is found insufficient because "the government . . . failed to prove its case" under the law as it existed at the time of trial. *See Burks v. United States*, 437 U.S. 1, 15 (1978); *Linam v. Griffin*, 685 F.2d 369, 373-74 (10th Cir. 1982) (explaining that *Burks* involved a situation where the Government "negligently fail[ed] to muster its proof" under the law as it existed at the time of trial). But when evidence offered at trial was sufficient to support the conviction under the law at the time but later was rendered insufficient by a post-conviction change in the law, the setting aside of a conviction on this basis is equivalent to a trial-error reversal rather than to a judgment of acquittal. *United States v. Weems*, 49 F.3d 528, 530-31 (9th Cir. 1995).

This is because, conceptually, the conviction is set aside as if it were due to a trial error like erroneous jury instructions. *See United States v. Ellyson*, 326 F.3d 522, 532, 534 (4th Cir. 2003); *Burks*, 437 U.S. at 15. Instructed under the (incorrect) law as it existed at the time of trial, the jury found the defendant guilty. The post-conviction change in the law shows those instructions were erroneous. The conviction is then set aside not because the government failed to prove its case but because the incorrect instructions allowed the jury to convict under the wrong legal standard. *See Burks*, 437 U.S. at 15. Because the setting aside of a conviction based on a post-conviction change in the law is akin to this sort of trial-error reversal, the Double Jeopardy Clause does not bar retrial in such cases. *See United States v. Davies*, 942 F.3d 871, 872, 874 (8th Cir. 2019); *United States v. Ford*, 703 F.3d 708,

-6-

710-11 (4th Cir. 2013); *Weems*, 49 F.3d at 530-31; *United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir. 1995).

Here, Harrington sought habeas relief based on a post-conviction change in the law as to what the Government had to establish to prove the resulting-in-death elements of Counts One and Seven. At the time of trial, the Government had to establish that Van Hoe's ingestion of the heroin distributed by Harrington was a "contributing cause" of Van Hoe's death. *See, e.g.*, *Monnier*, 412 F.3d at 862. Harrington does not dispute that the Government produced sufficient evidence at trial to establish this. However, several years later, the *Burrage* Court abrogated the "contributing cause" standard and adopted a but-for standard. 571 U.S. at 210-12, 217-19. Harrington then received habeas relief because of *Burrage* and the Government's stipulation that his life sentences should be vacated due to insufficient evidence at trial to meet the changed standard under *Burrage*. The "insufficiency in proof" here "was caused by the subsequent change in the law under [*Burrage*], not the [G]overnment's failure to muster evidence" to satisfy the former standard. *See Ellyson*, 326 F.3d at 533. Therefore, the Double Jeopardy Clause does not prohibit Harrington's retrial. *See Davies*, 942 F.3d at 874; *Ford*, 703 F.3d at 710.

Harrington argues that the "post-conviction change in law" rule we adopted in *Davies* does not control this case for either of two reasons. First, he claims that the Government's stipulation acknowledging that its trial evidence was insufficient under *Burrage* with respect to the resulting-in-death elements of Counts One and Seven amounts to a binding concession that it will lack the proof needed to convict him on retrial of the resulting-in-death elements under *Burrage*. Second, he claims that, stipulation aside, the evidence on this issue is not going to change and is insufficient under *Burrage*, so "the facts of the case, on their own," mean that the Government will be unable to prove on retrial the resulting-in-death elements under *Burrage*. Harrington contends that, for either of these reasons, the setting aside of his conviction on the resulting-in-death elements is equivalent to a judgment of acquittal, preventing his retrial on these elements under the Double Jeopardy Clause. *See Burks*, 437 U.S. at 10-11, 16-18.

Even assuming Harrington is correct that the Government would, for one reason or another, be unable to prove on retrial the resulting-in-death elements under *Burrage*, we reject his conclusion that this brings his case within *Burks*'s "equivalent of an acquittal" principle. *Burks* "carved a narrow exception" to the general rule that a defendant who gets his conviction set aside on appeal can be retried without violating the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 40 (1982); *United States v. Curtis*, 683 F.2d 769, 773 (3d Cir. 1982) ("This exception to the general rule has been construed quite narrowly."). As relevant here, *Burks*'s exception applies when a reviewing court "has found that the prosecution produced insufficient evidence at [the] first trial" to sustain the conviction under then-applicable law. *See Satter*, 977 F.2d at 1263; *Linam*, 685 F.2d at 373-74. The rationale underlying the *Burks* exception is that the Double Jeopardy Clause forbids the government from getting "the proverbial 'second bite at the apple.'" *Burks*, 437 U.S. at 17.

That rationale is not implicated here. Retrial does not give the Government "a second opportunity to prove what it should have proved earlier." *See Weems*, 49 F.3d at 531. Instead, the Government is being given a first opportunity to prove what it did not need to prove before but needs to prove now. *See id.* at 530-31. Whether or not the Government will be able to carry its burden of proof on retrial, the fact remains that retrial is the Government's first "bite at the apple" to prove its case under the correct legal standard. "Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause," as understood by *Burks*, "is aimed." *Lockhart*, 488 U.S. at 42. Thus, *Burks*'s "equivalent of an acquittal" exception is inapplicable here. *See Curtis*, 683 F.2d at 773 (noting that *Tibbs* "suggest[s] caution" in applying *Burks* outside its "narrow confines"); *cf. Parker v. Norris*, 64 F.3d 1178, 1181 (8th Cir. 1995) ("[T]he Supreme Court has repeatedly refused to extend *Burks* as far as logic might permit.").

## IV.

For the foregoing reasons, we affirm the district court's denial of Harrington's motion to dismiss.

_____