# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2021

Lyle W. Cayce
Clerk

No. 20-40611

United States of America,

*Plaintiff—Appellee*,

*versus*

Jonathan Matthew Torres,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CR-38-1

Before Owen, *Chief Judge*, Smith, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Mr. Jonathan Torres detonated a bomb outside a church's administrative building. He was convicted under 18 U.S.C. § 844(i), which requires that the building damaged by fire or explosion be used in or influence interstate commerce. The district court concluded that the church's administrative building met the statute's affecting-interstate-commerce requirement because it housed the offices that coordinated the rental of the church's facilities to outside parties and the church's tuition-based childcare programs. We agree with the district court and affirm.

No. 20-40611

I.

In April 2018, officers for the Police Department of Beaumont, Texas, found a bomb that had been mailed to a local Starbucks. The bomb, made with Tannerite, a Tomcat-brand mousetrap, zip ties, string, screws, and nails, never detonated because it lacked a firing pin. A note with peel-and-stick letters accompanied the bomb and was signed "JH."

The next day, "J Hancock" sent a postcard to police asking if they "wanted another Austin[?]," which was a reference to bombs detonated around Austin, Texas, a month earlier. About a week later, a bomb went off at St. Stephen's Episcopal Church in Beaumont.

The blast damaged the church's administrative building. At the scene, law enforcement found pieces of a Tomcat-brand mousetrap, fragments of a postal service box, string, nails, screws, and Tannerite. The next day, police received another card signed "JH." This time the card read "Would you like to play a game?" and referenced the comic book series V for Vendetta. Police received two other similar notes signed "JH."

Officers executed a search warrant on Jonathan Torres's residence and discovered a comic book postcard set missing the exact postcards that the police had received as well as a Tomcat-brand mousetrap, adjustable zip ties, postal service boxes, nails, screws, and unmixed Tannerite. Torres had also enshrined a framed photo of the Boston Bomber above his bed. Torres was arrested and charged with possession of an unregistered destructive device (26 U.S.C. § 5861(d)), mailing a threatening communication (18 U.S.C. § 876(c)), and using an explosive to cause property damage (18 U.S.C. § 844(i)).

Torres moved pre-trial to dismiss the § 844(i) count on Commerce-Clause grounds, arguing that the church did not conduct business activities affecting interstate commerce. The district court held a hearing where the government produced evidence that led the court to deny the motion. The church's administrative building was the center of its business operations.

No. 20-40611

For example, the church ran its afterschool, nursery, and summer childcare programs, for which it charged tuition, out of the building and conducted all of the administrative work that allows it to rent out its facilities to outside organizations there.

The case proceeded to a bench trial where the parties stipulated to the inclusion of evidence obtained at the evidentiary hearings. The district court found Torres guilty of violating 18 U.S.C. § 844(i). Torres appealed.

## II.

As an initial matter, the government assumes that Torres is challenging the sufficiency of his conviction on the statute's use-in-commerce element, though he describes his argument as a challenge to the jurisdiction of the district court to decide the case. The government's framing is correct. As courts have explained, "the interstate commerce element of § 844(i) implicates the power of Congress to regulate the conduct at issue, not the jurisdiction of the court to hear a particular case." *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001). A claim of insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is considered a claim about the sufficiency of the evidence. *United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001); *United States v. Beck*, 250 F.3d 1163, 1165 (8th Cir. 2001); *United States v. Martin*, 147 F.3d 529, 531-32 (7th Cir. 1998).

We review the interpretation of a criminal statute and a challenge to the sufficiency of the evidence de novo. *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013). Although sufficiency review is labeled de novo, this is something of a misnomer because the court's review is "'highly deferential to the verdict.'" *United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009) (quoting *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002)). We must therefore uphold a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

### III.

Congress has the power to regulate "activities having a substantial relation to interstate commerce . . . ." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). Based on that power, it passed 18 U.S.C. § 844(i), which applies to anyone who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

Torres argues that the administrative building he bombed was used only in spiritual and charitable activities and not used in interstate commerce or in any activity substantially affecting interstate commerce. Torres is correct in that a church does not generally function in a manner that places it in any significant relationship with interstate commerce. *United States v. Lamont*, 330 F.3d 1249, 1257–58 (9th Cir. 2003); *United States v. Rea*, 300 F.3d 952, 960–62 (8th Cir. 2002).

For example, in *United States v. Johnson*, this court concluded that the church's membership in an organization that sent and spent funds out of state and its purchasing of insurance from an out-of-state provider were insufficient to show that its building was used in a way that affected interstate commerce. 194 F.3d 657, 662 (5th Cir. 1999), *cert. granted, judgment vacated*, 530 U.S. 1201 (2000); *United States v. Johnson*, 246 F.3d 749, 752 (5th Cir. 2001) (reaching same result as 194 F.3d 657).

Other circuits have found similar conduct insufficient. For example, the Eighth Circuit has found that a church's annex did not affect interstate commerce because no one who met in it traveled from out of state, it was not part of any market for tutoring or childcare, no financial transactions occurred in it, and donations were processed elsewhere. *Rea*, 300 F.3d at 962. And the Ninth Circuit has found that a church was not engaged in interstate

commerce because the only evidence introduced was the church's membership in a national religious institution and that it purchased insurance policies from an out-of-state provider, purchased out-of-state goods for its own consumption, had out-of-state members, and distributed a publication interstate. *Lamont*, 330 F.3d at 1255-59. So fleeting, negligible, and passive connections to interstate commerce such as having out-of-state members, being a member of a national organization, or purchasing out-of-state goods will not suffice.

But as this court's analysis in *Johnson* implicitly acknowledges, and as other circuits have recognized, a church building can be used for commercial purposes and thus fall within § 844(i)'s ambit. *See Johnson*, 246 F.3d at 752. Doing so, however, requires the presence of more substantial and active commercial involvement than the activities mentioned above. For example, the Supreme Court found in *Russell v. United States*, 471 U.S. 858 (1985), that the rental of real estate affects commerce. *Id.* at 862. So a church's renting out its facilities could suffice.

Additionally, the Fourth and Tenth Circuits have concluded that "housing a daycare center whose function is to provide child care services in exchange for payment singlehandedly transforms a place of worship into a building that is actively employed for commercial purposes." *United States v. Gillespie*, 452 F.3d 1183, 1188 (10th Cir. 2006) (citing *United States v. Terry*, 257 F.3d 366, 371 (4th Cir.2001)). *See also United States v. Doggart*, 947 F.3d 879, 885 (6th Cir. 2020) (reaching similar conclusion). Further, in an unpublished decision, this court held that a funeral home's purchasing of caskets that were manufactured out of state satisfied the interstate commerce element of § 844(i). *United States v. Caldwell*, 120 F.3d 266, 1997 WL 420240, *4 (5th Cir. 1997).

We have similar commercial activities present here. The church rents its facilities to vendors and to individuals for receptions, parties, townhalls, cotillion, dances, and other nonreligious gatherings. The fees from these rentals more than cover the cost of maintenance and upkeep, and the

administrative building houses all the business activities related to the church's rental operation.

The church also runs child care programs for which it charges tuition. The business and financial aspects of these programs, which include receiving and processing tuition payments, hiring and paying staff, and purchasing supplies, all take place in the administrative building. Moreover, the church receives cremated remains from deceased in-state and out-of-state parishioners and purchases urns from an out-of-state supplier. The administrative building serves as the business office for these funeral services and processes all the related paperwork and payments.

Because the church uses the building to rent its facilities, operate its child care programs, and process the paperwork related to funeral services, "[t]his is not a case where the government relies only on passive activities, such as the purchase of utility services or insurance from an out-of-state provider, to demonstrate the building's use in and effect on interstate commerce. The church's interstate connections [are] direct, regular and substantial." *United States v. Rayborn*, 312 F.3d 229, 234 (6th Cir. 2002). Consequently, we AFFIRM.