

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-2005

# USA v. Davies

Precedential or Non-Precedential: Precedential

Docket No. 03-1933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Davies" (2005). *2005 Decisions.* Paper 1538.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1538

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-1933

UNITED STATES OF AMERICA

v.

TODD R. DAVIES,

Appellant

On Appeal From the United States
District Court
For the Western District of Pennsylvania
(D.C. Crim. Action No. 98-cr-00079)
District Judge:  Hon. Gary L. Lancaster

Argued June 29, 2004

BEFORE:  AMBRO, ALDISERT and STAPLETON,
<u>Circuit Judges</u>

(Opinion Filed January 13, 2005)

———————

Lisa B. Freeland (Argued)
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA  15222
  Attorney for Appellant

Mary Beth Buchanan
Bonnie R. Schlueter
Kelly R. Labby
Paul M. Thompson (Argued)
Office of the United States Attorney
700 Grant Street - Suite 400
Pittsburgh, PA  15219
  Attorneys for Appellee

———————

OPINION OF THE COURT

———————

STAPLETON, Circuit Judge:

   Todd R. Davies appeals the District Court's denial of his 28 U.S.C. § 2255 petition.  One of the claims for relief there

asserted is now acknowledged to be foreclosed by our case law. The other two were found by the District Court to be procedurally barred. Because the Court further concluded that Davies could not establish cause and prejudice, or actual innocence, to overcome that bar, the petition was denied. We hold that Davies has demonstrated that he is "actually innocent" of the 18 U.S.C. § 844(i) violation at issue here because, "'in light of all the evidence,' [presently before us] 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)). Where the local church that Davies stood accused of burning had no more than a passive connection to interstate commerce, no reasonable juror could have concluded that Davies destroyed by fire a building "used in interstate . . . commerce or in any activity affecting interstate . . . commerce," 18 U.S.C. § 844(i). This showing of "actual innocence" entitled Davies to have both of his remaining claims for relief resolved on their merits. While the District Court correctly resolved one of those claims in the course of determining that Davies had shown no cause and prejudice for his procedural default, one claim remains unresolved. Accordingly, we will reverse the judgment of the District Court and remand for further proceedings.

I.

Davies has had a long history of mental illness, resulting in significant part, his clinicians opine, from his involvement as a youth with the Calvary Baptist Church in Butler, Pennsylvania. On March 12, 1998, about ten years after he was no longer involved with Calvary Baptist, Davies burned down the church's

building, which was utilized as both a place of worship and a school.

Davies's clinicians suggest that he suffered years of abuse from ages 12 to 16, when he attended school at the church, due to "overly-strict church governance." Given our view of the legal issues presented, it is not necessary for us to detail those allegations of abuse or provide a summary of Davies's resulting mental illness.[1] Suffice it to say, Davies's clinicians opine that his mental illness affected his behavior on March 12, 1998. There is no dispute, however, that Davies was the one who burned down the church.

On May 21, 1998, Davies was charged with violating 18U.S.C. § 844(i). The indictment read:

> On or about March 12, 1998 . . . the defendant . . . did maliciously damage and destroy, by means of fire, a building which was used in interstate commerce and in an activity affecting interstate commerce, which building was known as the Calvary Baptist Church . . . [i]n violation of Title 18, United States Code, Section 844(i).

A163.    Davies tried unsuccessfully to have the charges

---

[1]Davies insists that he is "actually innocent" of the malice element of 18 U.S.C. § 844(i) and, accordingly, that he has cured his procedural default. Because we conclude that he has cured that default in a different manner, we do not reach that issue.

dismissed. He ultimately pleaded guilty.

At the plea hearing, the prosecutor represented that the church was

> engaged in or affecting interstate commerce in the sense that moneys collected from the members of the church were utilized to purchase supplies, books and other materials outside the Commonwealth of Pennsylvania. In addition, funds were raised at the church to support missions both outside the Commonwealth of Pennsylvania and outside the United States of America.

A252.

Davies's pre-sentence report ("PSR") concluded that he was subject to a mandatory statutory minimum sentence of five years. Davies requested a downward departure on three grounds, but the District Court held that it was without authority to depart. Davies appealed, challenging only the constitutionality of the five-year minimum sentence and the District Court's determination that it lacked authority to depart downward. His conviction and sentence were affirmed by this Court.

Davies then filed a timely *pro se* motion to vacate his conviction pursuant 28 U.S.C. § 2255,[2] raising three issues.

---

[2] 28 U.S.C. § 2255 provides a one-year period in which to file an initial motion to vacate that runs from, *inter alia*, "the date on

Taken directly from the petition, they are:

> Ground One - There was not a sufficient factual basis for the guilty plea. At the plea hearing, the government did not state facts on the record sufficient to establish an interstate commerce nexus.

> Ground Two - The Court lacked jurisdiction to accept the plea. The government did not present a sufficient factual basis for the interstate commerce element of arson.

---

which the judgment of conviction becomes final." *Id.* "[A] 'judgment of conviction becomes final' within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Where, as here, "a defendant does not file a certiorari petition," the "judgment of conviction does not become 'final' until the time for seeking certiorari review expires. A defendant has 90 days from the date on which the court of appeals affirms the judgment of conviction to file a petition for a writ of certiorari." *Id.* at 570-71 (citing Supreme Court Rule 13). Davies's motion, filed within one year plus 90 days from the date his conviction was affirmed by this Court, was thus timely filed.

Ground Three - Denial of effected assistance of counsel. My counsel did not explain to me that my conduct did not actually fall within the definition of the crime charged.

A124-25.[3]

The District Court first addressed these three grounds for

---

[3]In appointed counsel's "Amended Motion," she presented the same issues in the following manner:

When Mr. Davies' pro se petition is construed liberally, as it must be to do substantial justice, *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999), it fairly presents the following legal issues:

(1) The government did not present a sufficient factual basis with respect to the interstate commerce element to support Mr. Davies' guilty plea;

(2) The Court lacked jurisdiction to accept Mr. Davies' guilty plea because the Calvary Baptist Church building was not used in interstate commerce or an activity affecting interstate commerce; and

(3) Mr. Davies' guilty plea was not voluntary and intelligent due to the fact that his counsel provided ineffective assistance during the plea process.

A145.

relief in its March 21, 2002, memorandum order.  It concluded that the trial court possessed jurisdiction to accept Davies's plea whether or not the Government presented sufficient evidence to support a finding in its favor on the interstate commerce element of the offense.  Davies acknowledges before us, as he must, that relief on this ground is foreclosed by *United States v. Williams*, 299 F.3d 250, 254 n.3 (3d Cir. 1999).[4]

With respect to Davies's other two grounds for relief, the District Court ruled that they were procedurally barred because of his failure to raise them on direct appeal.  As a result, the Court concluded, they could not be addressed on their merits unless Davies first showed "cause and prejudice" or "actual innocence."

From this point on, the proceedings in the District Court focused on whether Davies could make these showings.  He attempted to do so by insisting (1) that his counsel's ineffective assistance in failing to advise him correctly regarding the evidence necessary to establish an interstate commerce nexus and in failing to raise the absence of such evidence on appeal constituted "cause" that resulted in prejudice to him, and (2) that he was "actually innocent" of the offense of conviction because

---

[4]In *Williams*, we determined that "[t]he 'jurisdictional element' [of § 844(i)] is merely one element of the criminal activity . . . and whether it is demonstrated in an individual circumstance does not affect a court's constitutional or statutory power to adjudicate a case."  *Williams*, 299 F.3d at 254 n.3 (parenthetically quoting *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001) (internal quotation marks omitted)).

the church building was not "used in interstate . . . commerce or in any activity affecting interstate commerce" as required by 18 U.S.C. § 844(i).

With respect to "cause and prejudice," the District Court held that Davies's counsel during the trial and on direct appeal had not been ineffective in failing to predict the Supreme Court's watershed decision in *Jones v. United States*, 529 U.S. 848 (2000), a decision issued after the conclusion of Davies's appeal. After an evidentiary hearing on the "actual innocence" issue, the Court further concluded that Davies had failed to establish that it was "more likely than not that no reasonable juror would have convicted him [of burning a church with the requisite interstate nexus]." A20. Davies's petition was accordingly dismissed as procedurally barred.

Because Davies's "cause and prejudice" argument and his "ineffective assistance of counsel" ground for relief were essentially coterminous, this third ground for relief was addressed and fully resolved by the District Court. However, because of the focus of the proceedings on the procedural default issues and the Court's ultimate resolution of those issues in the Government's favor, the parties had no occasion to further develop Davies's basis for his first ground for relief. Similarly, because the parties have briefed only the procedural default issues before us, that claim has not been further developed during the appellate process. It is clear to us only that it is intended to constitute a claim separate from Davies's ineffective assistance of counsel claim.

As noted earlier, we conclude that Davies has carried his burden of showing actual innocence on the charge of violating 18 U.S.C. § 844(i). We agree with the District Court, however, that the performance of Davies's counsel was not below the

constitutional standard of competence. This leaves unresolved only Davies's first claim for relief.

## II.

We have jurisdiction to review the District Court's denial of Davies's 28 U.S.C. § 2255 motion under 28 U.S.C. § 1291 and § 2253(a). *See Jansen v. United States*, 369 F.3d 237, 243 (3d Cir. 2004). "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997).

## III.

The Supreme Court recently held that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." *Dretke v. Haley*, 124 S.Ct. 1847, 1852 (2004). Accordingly, we turn first to Davies's claim of ineffective assistance of counsel. Contrary to the view taken by the District Court, we conclude that this claim was not procedurally defaulted.

As we have explained, one of Davies's substantive claims for relief was that his plea was invalid because he was deprived of his right to effective assistance of counsel when his attorney failed to advise him of what the Government would be required to prove to satisfy the interstate commerce element of § 844(i). Citing our decision in *United States v. Titchell*, 261 F.3d 348,

10

352 (3d Cir. 2001), Davies insisted before the District Court that this kind of claim is not required to be raised on direct appeal and, accordingly, that it was not procedurally defaulted by his failure to do so. A373. This view is clearly sound. In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 504. While Davies has not called *Titchell* or *Massaro* to our attention and may have waived this argument by failing to brief it on appeal, we take note of it in order to maintain the continuity of our circuit jurisprudence.[5]

---

[5]The Supreme Court adopted in *Massaro* what had already been our Court's rule. *See, e.g., United States v. DeRewal*, 10 F.3d 100, 103-04 (3d Cir. 1993) (holding that a § 2255 petitioner is "not required to show 'cause and prejudice' with respect to his failure to raise his ineffective assistance of counsel claim on direct appeal," and suggesting that a § 2255 motion is ordinarily the proper vehicle for an ineffective assistance claim); *United States v. Jake*, 281 F.3d 123, 132 n.7 (3d Cir. 2002) ("[W]e have stated repeatedly that Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255 rather than on direct appeal."); *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) ("Nahodil's principal claim is that his counsel was ineffective for improperly advising him to enter a plea of guilty despite his repeated objections to doing so. A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel.")

11

Our willingness to take note of this precedent does not aid Davies, however. While we relieve him of the burden of curing a procedural default, he must nevertheless demonstrate that he has a meritorious substantive claim for relief based on the performance of his attorney. For the same reasons that the District Court refused to recognize Davies's ineffective assistance of counsel argument as a showing of cause and prejudice, we reject it as a substantive ground of relief.

Davies pleaded guilty on December 14, 1998. On May 22, 2000, the Supreme Court issued an opinion with respect to the interstate commerce element of the federal arson statute, 18 U.S.C. § 844(i). As noted above, the arson statute applies only where a defendant destroys property "used in interstate . . . commerce or in any activity affecting interstate . . . commerce." *Id.* Noting that this language could be "susceptible of two constructions, by one of which grave and doubtful constitutional questions arise [in light of *United States v. Lopez*, 514 U.S. 549 (1995)] and by the other of which such questions are avoided," the Court reminded that its "duty [was] to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857 (2000). The Court thus rejected the Government's proposed expansive construction of § 844(i) under which any sort of *de minimis* connection between interstate commerce and a building would suffice to make its destruction a federal crime under § 844(i). Instead, the Court adopted a construction of the interstate commerce element of § 844(i) whereby that provision would cover "only property currently used in commerce or in an activity affecting commerce." *Id.* at 859. Accordingly, in *Jones*, an owner-

(footnote omitted).

occupied residence was held not to be property used in commerce or in an activity affecting commerce, even though it was purchased with the proceeds of a loan from an out-of-state lender, was covered by an insurance policy written by an out-of-state insurer, and was serviced with out-of-state natural gas. As we will examine in detail *infra*, Davies suggests that, under *Jones*, the burning of a community church not used for any commercial purpose or purpose affecting commerce falls outside of the scope of the interstate commerce element of § 844(i).

To demonstrate that his counsel was ineffective, Davies "'must [first] show that counsel's representation fell below an objective standard of reasonableness.'" *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). A court "deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Strickland*, 466 U.S. at 690 (emphasis added). With respect to the reasonableness of counsel's conduct, "[o]nly in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an [argument] which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). "[T]he proper standard for [measuring minimum constitutional] attorney performance is that of reasonably effective assistance," *Strickland*, 466 U.S. at 687, and not "exceptional" assistance, *Brown v. United States*, 311 F.3d 875, 877 (8th Cir. 2002).

Prior to *Jones*, a far more expansive interpretation of § 844(i)'s interstate commerce element ruled the day. Case law to

13

that point had required only that the Government show a *de minimis* connection to interstate commerce.[6]  The record

---

[6]*See, e.g.*, *United States v. Medeiros*, 897 F.2d 13, 16 (1st Cir. 1990) ("To establish jurisdiction under § 844(i), the government need show only a *de minimis* connection to interstate commerce."); *United States v. Grossman*, 608 F.2d 534, 536 (4th Cir. 1979) ("The punishment in § 844(i) of the unlawful use of explosives in an intrastate activity, but which has an effect on interstate commerce although *de minimis*, is within the power of Congress to enact as an appropriate means to accomplish a legitimate end under the commerce power."); *United States v. Shively*, 927 F.2d 804, 808 (5th Cir. 1991) ("Even a *de minimis* effect on interstate commerce will suffice to support Congress' ability to enact [§ 844(i)] under the Commerce Clause."); *United States v. Martin*, 63 F.3d 1422, 1426 (7th Cir. 1995) ("Section 844(i) applies to both businesses and residences, and reaches arson of any property having even a *de minimis* connection to interstate commerce.") (internal citations omitted); *United States v. Rea*, 169 F.3d 1111, 1113 (8th Cir. 1999) ("[T]his Court has held that section 844(i) reaches arson of any property having even a *de minimis* connection to interstate commerce.") (internal quotation marks omitted), *abrogation recognized by United States v. Rea*, 300 F.3d 952, 960 (8th Cir. 2002); *United States v. Schwanke*, 598 F.2d 575, 578 (10th Cir. 1979) ("Congress has the power to punish the unlawful use of explosives under the Commerce Clause even though the effect on interstate commerce may be *de minimis*.").

We had not addressed whether a *de minimis* connection

14

demonstrates that Davies's trial and appellate counsel knew that the church building here regularly purchased supplies from out of state–a fact that, prior to *Jones*, would have been sufficient to meet the interstate commerce element of § 844(i). *See, e.g.*, *Schwanke*, 598 F.2d at 578 (*de minimis* connection to interstate commerce existed where business in building destroyed "purchased candy, gum and vegetables from" out of state); *United States v. Sweet*, 548 F.2d 198, 200-02 (7th Cir. 1977) (destruction of tavern had sufficient *de minimis* connection to interstate commerce where tavern purchased out-of-state liquor and beer from local distributor).

Davies argues that his counsel had the same case law in front of her as the lawyers who later would challenge successfully in the Supreme Court the federal arson conviction at issue in *Jones*, and that his lawyer could have mounted a similar challenge to the interstate commerce element of §

---

would suffice, but instead focused upon whether the destroyed building "was used, or intended to be used, in an activity affecting interstate commerce," *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997), the language of the interstate commerce element found in § 844(i) that the Supreme Court would later address in *Jones*. We did, however, reject in *Gaydos* the argument that "*Lopez* . . . render[s] § 844(i) unconstitutional," *id.* at 508, which certainly would not have encouraged Davies's counsel to argue on direct appeal that *Lopez* required, as *Jones* would later hold, a narrow construction of § 844(i)'s interstate commerce element.

15

844(i).[7] Davies's counsel, however, had no duty to predict that the arguments in *Jones* would become the law of the land, and did not act unreasonably in failing to advise Davies of its teachings before his guilty plea or in failing to rely on those teachings when pursuing Davies's direct appeal. Finding no ineffective assistance of counsel, we will affirm the District Court's denial of Davies's motion to the extent it rested on that ground. Additionally, there is therefore no basis for Davies's assertion of "cause" by way of ineffective assistance of counsel with respect to his remaining defaulted claim. Accordingly, we now turn to Davies's assertion that he is actually innocent and may thus raise his remaining defaulted claim.

IV.

---

[7]Davies additionally notes that, during briefing for his direct appeal, this Court decided *United States v. McGuire*, 178 F.3d 203 (3d Cir. 1999). In *McGuire*, we questioned whether, after the Supreme Court's decision in *Lopez*, a *de minimis* connection to interstate commerce could suffice to bring an act within the reach of § 844(i). We did not decide whether some greater connection to interstate commerce would be necessary because, we noted, the only connection in that case–a container of orange juice that had traveled interstate–would not even meet that minimal standard. While *McGuire* foreshadows that post-*Lopez* a heightened connection to interstate commerce might be necessary under § 844(i), it does not adopt such a heightened standard and, consequently, does not alter the legal landscape on the basis of which reasonable counsel at the time of Davies's appeal would have pursued an appeal.

16

"To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley,* 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-328 (internal quotation marks omitted)). Davies claims that he is "actually innocent" of his 18 U.S.C. § 844(i) offense of conviction because the church building he burned was not "used in interstate . . . commerce or in any activity affecting interstate . . . commerce" within the meaning of that statutory text as interpreted by the Supreme Court in *Jones v. United States*.

"New reliable evidence is almost always required to establish actual innocence." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002).[8] "We have held," however, "that, in certain circumstances, the lack of new evidence is not necessarily fatal to an argument that a petitioner is actually innocent." *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir. 2002). In *Bousley v.*

---

[8]"New" evidence in this context does not necessarily mean "newly discovered" evidence. Two circuit courts have concluded that *Schlup* allows a petitioner to offer "newly presented" evidence (that is, evidence that was not presented to the trier of fact) and that a petitioner is not limited to offering only "newly discovered" evidence (that is, evidence discovered post-conviction). *See Gomez v. Jaimet*, 350 F.3d 673, 679-80 (7th Cir. 2003); *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). We need not weigh in today on the "newly presented" versus "newly discovered" issues because, as we note below, we write in the context of a claim that a post-conviction Supreme Court decision has held that the statute of conviction does not reach the petitioner's conduct.

17

*United States*, 523 U.S. 614 (1998), for example, the Supreme Court held that a habeas petitioner may demonstrate "actual innocence" by pointing to post-conviction decisions "holding that a substantive criminal statute does not reach [his] conduct." *Id.* at 620.

The petitioner in *Bousley* had pleaded guilty to "using" a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He sought collateral relief from the resulting conviction, claiming that his plea was not knowing and intelligent because he was misinformed by the court as to the nature of the crime charged. Following Bousley's conviction, the Supreme Court held in *Bailey v. United States*, 516 U.S. 137 (1995), that the "use" prong of § 924(c)(1) required the Government to show "active employment of the firearm." *Id.* at 144. Thus, contrary to the previously prevailing view, a defendant could no longer be "charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds" or for "placement of a firearm to provide a sense of security or to embolden." *Id.* at 149.

In *Bousley*, the Court agreed with the Government that the petitioner had procedurally defaulted his claim that his plea had not been knowing and intelligent. It held, however, that Bousley could cure this default by showing that, under the new *Bailey* interpretation of "using," he was "actually innocent" of violating § 924(c)(1). Accordingly, Bousley had to be afforded the opportunity to "demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28). If successful, Bousley would then be entitled to have his claim to post-conviction relief considered on its merits. The Court stressed that "actual innocence" in this

18

context means "factual innocence" and that the Government is not limited to the existing record to rebut any showing that petitioner might make. *Id.* at 624.

Relying on *Bousley* and our ensuing decision in *United States v. Garth*, 188 F.3d 99 (3d Cir. 1999), Davies here seeks to cure his procedural default by demonstrating that he is actually innocent of violating § 844(i) as interpreted by the Supreme Court in *Jones*. The District Court properly determined that Davies was entitled to the benefit of *Jones* in his effort to show actual innocence and, in accordance with *Bousley*, held an evidentiary hearing at which the Government was permitted to introduce evidence demonstrating that Davies was not actually innocent of the interstate commerce element of § 844(i) under *Jones*. Thereafter, it determined that the evidence as a whole established Davies's guilt. We now apply the *Jones* legal standard *de novo* to the factual determinations reached by the District Court, none of which were clearly erroneous. That application leads us to a conclusion contrary to that reached by the District Court.

A. *Jones* and the Interstate Commerce Element
of 18 U.S.C. § 844(i)

As we have noted, 18 U.S.C. § 844(i) makes it a federal crime to "maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. . . .*" *Id.* (emphasis added). In *Jones*, the Supreme Court concluded that Congress did not "evoke its full authority under the Commerce Clause" in

19

enacting § 844(i) and that the "key" words here are "the qualifying words 'used in' a commerce-affecting activity." *Jones*, 529 U.S. at 854. By its terms, the statute applies only to property that is 'used' in interstate commerce or in an activity that affects interstate commerce. This "used in" qualification, the Court concluded, "is most sensibly read to mean *active employment for commercial purposes*, and not merely a passive, passing, or past connection to commerce. . . ." *Id.* at 855 (emphasis added). Accordingly, the "proper inquiry . . . 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.'" *Id.* at 854 (quoting from *United States v. Ryan*, 9 F.3d 660, 675 (8th Cir. 1993) (Arnold, C.J., concurring in part and dissenting in part)). In this context, it is of course "clear . . . that only business-related activities constitute 'commerce.'" *United States v. Mennuti*, 639 F.2d 107, 109-10 (2d Cir. 1981); *see Jones*, 529 U.S. at 854-55 n.6 (endorsing *Mennuti* in relevant part). "Interstate commerce" is defined as "commerce between any place in a State and any place outside of that State. . . ." 18 U.S.C. § 841(b).

Applying this interpretation of the statute to the facts before it, the *Jones* Court held that "an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce affecting activity." *Jones*, 529 U.S. at 850-51. The owners' securing natural gas, a mortgage, and an insurance policy from out of state was found not to constitute "use" of the property in a commerce or commerce-affecting activity.

In support of its conclusion, the Court noted that if nothing more than these *de minimis* connections to interstate commerce were required to come within the scope of § 844(i),

20

"hardly a building in the land would fall outside the federal statute's domain." *Id.* at 857. This fact required adoption of the petitioner's narrower construction "[g]iven the [constitutional] concerns brought to the fore in *Lopez*" regarding the power of Congress "to render the 'traditionally local criminal conduct' in which petitioner Jones engaged 'a matter for federal enforcement.'" *Id.* at 858 (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)). Section 844(i), the Court concluded, is not "soundly read to make virtually every arson in the country a federal offense." *Jones*, 529 U.S. at 859.

The text–"used in interstate commerce . . . or in any activity affecting interstate . . . commerce"–"suggests two methods by which a building can fall within section 844(i)'s interstate commerce element: the commercial function of the property could directly inject it into the stream of interstate . . . commerce and/or the building's functions could cause it to be used in an activity affecting interstate commerce." *United States v. Rea*, 300 F.3d 952, 961 (8th Cir. 2002). We do not understand the Government to contend that the church Davies burned was directly in the stream of interstate commerce. It does insist, however, that the church building was used in activities affecting interstate commerce. We know from *Jones*, however, that for a building to be in that category it must be "*active[ly] employ[ed] for commercial purposes.*" Accordingly, we turn to the question of whether, at the time of the fire, the Calvary Baptist Church building was so employed.

## B. The Calvary Baptist Church

The Calvary Baptist Church building contained a sanctuary used for religious purposes and a small school. "A

21

church, like the owner-occupied residence considered in *Jones*, generally does not function in a manner that places it in any significant relationship with commerce, let alone interstate commerce. A church's primary function is essentially non-commercial and non-economic." *United States v. Lamont*, 330 F.3d 1249, 1254 (9th Cir. 2003); *see also Rea*, 300 F.3d at 960 ("The fact that a building is a church, without more, however, does not bring it within the ambit of section 844(i)."); *United States v. Carr*, 271 F.3d 172, 179 (4th Cir. 2001) ("[U]se of a building as a church does not alone qualify it as being 'used in' interstate commerce."). In short, a normal church is no more "active[ly] used for commercial purposes" than was the residential home in *Jones*.

It is true, as the Government insists, that churches can engage in commercial functions. *See Lamont*, 330 F.3d at 1255 (describing "megachurches" that offer banking, shopping, barbershop, and fitness center services and suggesting that these functions may be sufficiently unrelated to religious worship to warrant the inclusion of such churches within the scope of § 844(i)). The record regarding the Calvary Baptist Church building, however, indicates that it was not being "actively used for commercial purposes."

At Davies's actual innocence hearing, the Government introduced the following evidence in an attempt to show that the Calvary Baptist Church building was "used in [an] activity affecting interstate . . . commerce" under § 844(i):

> (1)     the church building contained a small school that was not shown to be selling its educational services. Its 75 students, after graduation, attended out-of-state universities, some of whom

22

received donations from the church;

(2)    the school purchased textbooks, desks, chairs, sports equipment, trophies, school bus engines, and school bus tires from out-of-state;

(3)    the church raised $24,000 per year from 1989 to 1998 (the year of the arson) to support the building of an out-of-state church in Wisconsin;

(4)    in 1998, the church made $12,000 in donations to ten missions, nine of which are in foreign countries and one of which is in California.[9]

---

[9]Although we operate under the "actual innocence" gateway whereby the Government may "present *any* admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy," *Bousley*, 523 U.S. at 624 (emphasis added), the Supreme Court has limited the Government to introducing only evidence proving that the petitioner is guilty of the crime *charged in the indictment*.

In *Bousley*, the Government "maintain[ed] that [Bousley] must demonstrate that he is actually innocent of both 'using' and 'carrying' a firearm," both of which the relevant statute there, 18 U.S.C. § 924(c)(1), made a crime. *Bousley*, 523 U.S. at 624. The Supreme Court noted, however, that

> petitioner's indictment charged him only with 'using' firearms in violation of § 924(c)(1). And there is no record evidence that the Government elected not to charge petitioner with 'carrying' a

23

We find the Government's first argument foreclosed by *United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the appellant had been indicted for violating the Gun-Free School Zone Act of 1990 by possessing a firearm in what he knew to be a school zone. He moved to dismiss the indictment on the ground that the Commerce Clause did not confer upon Congress the power "to legislate control over . . . public schools." *Id.* at 551. The District Court denied the motion, concluding that the statute was an "exercise of Congress' well-defined power to regulate activities in and affecting commerce, and the 'business' of elementary, middle and high schools . . . affects interstate commerce." *Id.* at 551-52. In support of this position, the Government argued as follows:

---

> firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined in *Bailey*.

*Id.*

Although the statute here includes both interstate and foreign commerce within its reach, Davies need only show that the building he destroyed was not used in *interstate* commerce, as charged by his indictment. The church's donations to missions in foreign countries, are, of course, not probative of its connection to *interstate* commerce. Accordingly, the Government's evidence suggesting that the church raised donations in 1998 sent to nine foreign missions is irrelevant to whether Davies destroyed a building used in *interstate* commerce, although the evidence indicating that funds were raised for a California mission remains relevant.

24

> [T]he presence of guns in schools poses a substantial threat to the educational process by threatening the learning environment. A handicapped educational process, in turn, will result in a less productive citizenry. That, in turn, would have an adverse effect on the Nation's economic well-being. As a result, the Government argues that Congress could rationally have concluded that [18 U.S.C.] § 922(q) substantially affects interstate commerce.

*Lopez*, 514 U.S. at 564.

The Supreme Court rejected this argument, holding that a public school does not engage in an activity that has sufficient effects on interstate commerce to bring the statute within Congress's power to regulate commerce. In the course of reaching this conclusion, the Court observed that the statute "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561. It took issue with the dissent's position that "Congress . . . could rationally conclude that schools fall on the commercial side of the line," noting that this view "lacks any real limits" and would give Congress the authority "to regulate each and every aspect of local schools." *Id.* at 566.

In *Lopez*, the Supreme Court was interpreting the Commerce Clause rather than § 844(i). Nevertheless, *Lopez* convinces us that the Court does not view a public school as actively engaged in commerce and we are constrained to interpret § 844(i) to avoid the constitutional issues that would otherwise arise under *Lopez*. Because we cannot distinguish the

25

public school in *Lopez* from the school operated in the Calvary Baptist Church, we cannot conclude that the latter's building was actively employed for commercial purposes as a result of its use as a school.

The Government's added twist here, that some students eventually went off to out-of-state colleges, would not distinguish the school within the Calvary Baptist Church building from most any school. Additionally, the fact that the *school* here may have given donations to other out-of-state *schools* does not convert the non-commercial role of the church school (or the out-of-state schools) into a commercial one.

The fact that this local school purchased goods (such as textbooks, desks, and chairs) from the national economy incident to running a local school surely is also not enough to bring its building within the ambit of § 844(i). As the Supreme Court observed in *Jones*, "[p]ractically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce." *Jones*, 529 U.S. at 857. The owners of the private home at issue in *Jones* also undoubtedly purchased furniture and equipment that moved in interstate commerce, and the public high school at issue in *Lopez* also purchased similar school supplies that moved in interstate commerce. Thus, the fact that the church school, a non-commercial entity, purchased goods that have moved in interstate commerce is not enough to bring its destruction within § 844(i), lest every other local school in our nation be subject to § 844(i). These types of "connections" to interstate commerce

constitute the type of attenuated contacts with interstate commerce that this particular church and most other churches in modern society have, and that are insufficient to bring a religious entity within the statutory definition. *Jones* emphasized that, in reviewing the application of § 844(i) to a particular arson, we must look for "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce."

*Lamont*, 330 F.3d at 1256 (quoting *Jones*, 529 U.S. at 855). The purchase of goods for use in conducting the activities of a local school is hardly "active employment for commercial purposes."

With respect to the fact that the church building was used to send funds to a Wisconsin congregation, "[t]hat the church may receive from or transmit funds to a national or religious entity with which it is affiliated does not mean that its activity has changed from non-commercial to commercial." *Lamont*, 330 F.3d at 1256. The fact that the church building here was used to send funds to another non-commercial religious organization in Wisconsin does not somehow mean that both churches were engaged in interstate commercial activity, or an activity affecting interstate commerce. Under the Government's view, hardly a single church would escape being a "national" one subject to § 844(i) because the raising of contributions ultimately sent to support out-of-state religious work would somehow affect interstate "commerce."

We are thus left with the fact that the Calvary Baptist Church raised some portion of $12,000 for a mission in California. The record does not detail what sorts of activities

27

the California mission undertook. We are mindful, of course, that we operate under the actual innocence gateway, whereby, "[t]o establish actual innocence, [Davies] must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-328) (internal quotation marks omitted). But the juror of which this speaks is a juror instructed that there can be no convictions unless he or she is persuaded of each element of the offense beyond a reasonable doubt. The raising of some portion of $12,000 within the Calvary Baptist Church building sometime in 1998 for an out-of-state mission whose activities are not known is simply not enough to support a finding of "active employment for commercial purposes," *Jones*, 529 U.S. at 855.

Thus, the Government has failed to provide *any* basis under which a reasonable juror could determine that the Calvary Baptist Church building in 1998 was used in an activity affecting interstate commerce, and Davies has demonstrated that he is actually innocent of a violation of 18 U.S.C. § 844(i).[10]

---

[10]Several circuit courts have reached the same conclusion with respect to church buildings with similarly passive connections to interstate commerce. *See, e.g.*, *Lamont*, 330 F.3d at 1256-57 (§ 844(i) did not apply where church purchased gas, insurance, and supplies from out of state, and several churchgoers resided out of state); *Rea*, 300 F.3d at 962 (purchase of supplies for church annex, along with after-school tutoring program and Sunday school having been conducted in the annex, were insufficient to bring church annex within scope of § 844(i)); *Odom*, 252 F.3d 1289 at 1296-97 (receiving

28

## V.

The District Court did not err in declining to grant relief on Davies's second and third claims. With respect to his first claim, we hold only that Davies has made a sufficient showing to overcome his procedural default and, accordingly, that he is entitled to have the District Court rule on the merits of that claim. We will therefore remand to afford it an opportunity for it to do so.

The parties have not briefed and we express no opinion on whether Davies's first claim falls within the strictly limited circumstances in which § 2255 permits relief from a guilty plea. As we have earlier noted, we acknowledge some uncertainty as to the nature of that first claim. At times, it is set forth in a manner consistent with a claim that the Constitution requires the presentation of a basis in fact for a plea similar to that required

donations from two out-of-state donors, utilizing books purchased from out of state, and indirectly contributing to an out-of-state church organization were connections "too passive, too minimal and too indirect to substantially affect interstate commerce"); *Johnson*, 194 F.3d at 662 (payment of insurance claim by out-of-state insurer and contribution of funds by church members to church's national organization were insufficient to meet interstate commerce element), *vacated and remanded by* 530 U.S. 1201 (2000) (in light of *Jones*), *reinstated with one additional change by* 246 F.3d 749 (5th Cir. 2001); *see also United States v. Laton*, 352 F.3d 286, 299 n.12 (6th Cir. 2003) (collecting cases).

29

by Rule 11 of the Federal Rules of Criminal Procedure. At other times, that claim is presented in a manner consistent with a contention that a generally prevailing misunderstanding regarding the interstate commerce element of § 844(i) at the time of Davies's plea resulted in that plea being "unintelligent" and thus constitutionally invalid. *See Bousley*, 523 U.S. at 618-19 ("[P]etitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proved, petitioner's plea would be . . . constitutionally invalid."). *See also Garth*, 188 F.3d at 108-09 (*Pro se* petitioner's "assertion that there was no factual foundation for his guilty plea equates to an assertion of a due process violation based on being sentenced to prison . . . for conduct that he did not know was not criminal under [the] statute."). We leave it to the District Court to clarify the nature of that claim, to determine its legal sufficiency, and to ascertain whether it can be factually supported.

We will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.