**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3522
_____

UNITED STATES OF AMERICA

v.

GEORGE HOPKINS,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-06-cr-00064-001)
District Judge: Hon. Christopher C. Conner
_____

Argued: May 14, 2014
_____

Before:  SMITH, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: June 3, 2014)

Ruben Cruz [ARGUED]
Duquesne University School of Law
914 Fifth Avenue
Pittsburgh, PA 15219


Emilia Rinaldi [ARGUED]
Duquesne University School of Law
600 Forbes Avenue
Pittsburgh, PA 15282

Adrian N. Roe, Esq.
707 Grant Street
Suite 1331
Gulf Tower
Pittsburgh, PA 15219

        Counsel for Appellant

Michael A. Consiglio, Esq. [ARGUED]
Office of United States Attorney
228 Walnut Street, Suite 220
Harrisburg, PA 17108

        Counsel for Appellee

_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

George Hopkins seeks relief pursuant to 28 U.S.C § 2255 based upon a claim that his trial counsel was ineffective by asserting that the sentencing judge lacked the authority to run his federal sentence concurrent with a yet-to-be-imposed state sentence. He asserts that the Supreme Court's decision in <u>Setser v. United States</u>, 132 S. Ct. 1463 (2012), demonstrates that such authority existed and that he is entitled to relief. Focusing as we must on the law as it existed at the time of sentencing, we conclude that defense counsel was not ineffective and we will affirm.

I

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. In the summer of 2005, Hopkins was serving a sentence

2

at the Dauphin County Work Release Center. At some point, he left the facility and did not return as required. A few months later, Hopkins and a friend drove to the Center to retrieve Hopkins's personal belongings. The friend went inside while Hopkins waited in the car.

A probation officer saw Hopkins sitting in the car and approached him. Hopkins pulled out a .22 caliber pistol and shot at the officer, grazing him in the back. Officers arrested Hopkins and took him to the Dauphin County Prison. During a routine search, prison officials found 8.6 grams of crack cocaine in Hopkins's underwear. Hopkins was thereafter charged with federal and state offenses.

On the federal side, a grand jury returned a two-count indictment charging Hopkins with possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hopkins pled guilty to the drug count and the firearms charge was dismissed.

On the state side, a Pennsylvania jury convicted Hopkins of two counts of aggravated assault upon the probation officer, carrying a firearm without a license, possession of a firearm by a felon, recklessly endangering another person, and providing false identification to police.

The District Court imposed its sentence first. During the sentencing hearing, Hopkins's attorney noted that Hopkins would be sentenced in state court in the future but never argued that the federal sentence should run concurrent with the future state sentence. To the contrary, defense counsel asserted that the sentences must run

3

consecutively. JA 55-56 ("Because we're proceeding with sentencing prior to any disposition in terms of sentence in state court, he's a state prisoner, he can't get any concurrent sentence despite what the presentence report indicates.")

The District Court sentenced Hopkins to 188 months' imprisonment but made no statements regarding whether the sentence should run concurrent with or consecutive to the yet-to-be imposed state sentence. Several weeks later, the state court imposed an aggregate sentence of 150 to 360 months' imprisonment and ordered that the state sentence run consecutive to the federal sentence.

Hopkins's federal sentence was based on his designation as a career offender, but this designation was vacated in light of Chambers v. United States, 555 U.S. 122 (2009). Hopkins v. United States, 555 U.S. 1132 (2009). On remand, we held that Hopkins was not a career offender, but that "[t]his conclusion [did] not require any change in Hopkins'[s] sentence" because Hopkins's assault on the officer triggered application of the official victim enhancement, which resulted in the same sentence. United States v. Hopkins, 577 F.3d 507, 515 (3d Cir. 2009). We therefore affirmed the sentence. Id. Hopkins's sentence was later reduced to 92 months' imprisonment due to the amendments to the Sentencing Guidelines relating to crack cocaine offenses.

Hopkins thereafter filed a motion pursuant to § 2255, claiming, among other things, that his counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for failing to request a concurrent sentence. Hopkins sought to amend his motion to assert that he is entitled to resentencing under Setser v. United States, 132 S. Ct. 1463 (2012), which he contends simply restates existing law that gave sentencing judges the

4

discretion to order that their sentences run concurrent with or consecutive to a yet-to-be imposed sentence.

The District Court found that because "Setser had not yet been decided and [Hopkins's] counsel did not believe that his federal sentence could be imposed concurrently with his state sentence," the ineffective assistance claim was meritless. JA 12. The District Court also denied the request to amend the motion based upon Setser because it concluded that Setser announced a new rule of law that did not apply retroactively under Teague v. Lane, 489 U.S. 288, 306 (1989), and therefore could not provide Hopkins a basis for relief. The District Court granted certificates of appealability on both issues. For the reasons set forth, we will affirm.

## III[1]

In Strickland, the Supreme Court provided the standard for judging ineffective assistance of counsel claims. 466 U.S. at 687. To succeed on his claim, Hopkins must show "(1) that his counsel's performance was deficient; and (2) that he was prejudiced by it." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008).

We first address whether Hopkins has shown "that his counsel's representation 'fell below an objective standard of reasonableness.'" Id. at 196 (quoting Strickland, 466 U.S. at 688). "A court 'deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We exercise plenary review over a district court's legal conclusions and apply a clear error standard to the court's findings of fact. United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008).

as of the time of counsel's conduct.'" United States v. Davies, 394 F.3d 182, 189 (3d

Cir. 2005) (quoting Strickland, 466 U.S. at 690, and adding emphasis).

To determine whether Hopkins's counsel was ineffective at sentencing, we must

assess the state of the law at the time of Hopkins's sentencing with respect to a federal

court's authority to impose a sentence to run concurrent with the yet to be imposed state

sentence. Davies, 394 F.3d at 189. At the time of sentencing, this Court had made

statements on this subject only in cases that predated the Sentencing Reform Act. In

United States ex rel. Lester v. Parker, 404 F.2d 40, 41 (3d Cir. 1968) (per curiam), this

Court held that a federal sentence ordered to run consecutive to a future state sentence

was sufficiently definite to satisfy due process. Thus, Lester provided authority for a

sentencing court to impose a sentence to run consecutive to a future sentence.[2] Id. at 42.

The language used in the then-existing precedent addressing the authority of a

federal sentencing judge to order the federal sentence to run concurrent with a yet-to-be-

imposed state sentence was different. For instance, in Barden v. Keohane, 921 F.2d 476

(3d Cir. 1990), this Court, in holding that only the Bureau of Prisons had the authority to

decide whether a state prison should be designated as the defendant's place of federal

confinement, and thereby allow the federal sentence to be served concurrent with the

state sentence, specifically stated (without explanation) that the district court was

"powerless" to order that a sentence run concurrent with a future sentence. Id. at 483.

_____

[2] Even though Lester only addressed consecutive sentences, Setser cited Lester for the proposition that appellate courts have recognized that federal sentencing courts have traditionally had discretion to select whether the sentences they impose will run either concurrent with or consecutive to future state sentences. Setser, 132 S. Ct. at 1468.

6

Barden relied upon Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976), in which this Court also stated (again without explanation) that a "federal court has no power to direct that a federal sentence shall run concurrently with a state sentence," and that it only had the ability to "recommend to the Attorney General that he designate a state institution as the place of service of a federal sentence in order to make it concurrent with a state sentence being served at that institution." Id. at 875.

While each of these cases involved review of the statutory authority that vested the Attorney General with the discretion to designate a state institution as the place at which a federal sentence could be served, this Court as well as at least one other relied on this statutory authority to say that a district court was powerless to order that its sentence run concurrent to or consecutive with a future sentence. Setser, 132 S. Ct. at 1468 n.2. Although some of this statutory authority had been repealed by the time Hopkins was sentenced, and even though none of the cases addressed the authority granted under the Sentencing Reform Act, the language in this precedent was unequivocal and counsel reasonably relied on it. Furthermore, as a result of this strong language, it was also reasonable for defense counsel not to bring to the sentencing court's attention cases from other circuits that had held there was authority to impose a federal sentence to run concurrent with a yet to be imposed state sentence. Cf. Jansen v. United States, 369 F.3d 237, 243-44 (3d Cir. 2004) (counsel's performance deficient where he failed to cite

7

favorable out of circuit cases that were readily available).  Thus, counsel's performance

was not deficient.[3]

---

[3] Hopkins's reliance on Setser is misplaced.  Setser announced a new rule that does not apply retroactively and hence it does not provide Hopkins with a basis for relief.  In Teague v. Lane. 489 U.S. 288 (1989), the Supreme Court addressed whether a federal court could grant habeas corpus relief to a prisoner based on a rule of criminal procedure announced by the Supreme Court after the prisoner's conviction became final.   In resolving this issue, the Teague Court articulated a framework that divided the world into "old rules" and "new rules."  A rule is new if it "'was not dictated by precedent existing at the time the defendant's conviction became final.'"  Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013) (quoting Teague, 489 U.S. at 301).  A "holding is not so dictated . . . unless it would have been apparent to all reasonable jurists."  Id. (quotation marks omitted).  Thus, whether a rule is an "old rule" depends on whether all "reasonable jurists" would agree that the rule was "dictated" by existing precedent.  Id.  Accordingly, a historically-rooted rule may still be "new" for Teague purposes so long as "reasonable jurists" would have disagreed on how (or whether) the rule applied to changed circumstances or new contexts.  See id. at 1108-10 (holding that a case applying the traditional Strickland standard to new context announced a new rule).

Setser articulated such a rule.  The issue in Setser was not whether federal district courts traditionally possessed broad sentencing discretion, but whether that traditional discretion was cabined by changed circumstances—namely, the Sentencing Reform Act.  Setser held that it was not.  This holding, however, was not "apparent to all reasonable jurists."  Chaidez, 133 S. Ct. at 1107.  Before Setser, a federal sentencing court may have (correctly) determined that neither the Sentencing Reform Act "nor any other statute . . . authorize[d] a federal judge to declare that his sentence must run consecutively [or concurrently] to some sentence that may be imposed in the future."  Romandine v. United States, 206 F.3d 731, 737 (7th Cir. 2000).  In fact, pre-Setser, at least five Circuit courts reasoned that since no statute authorizes a federal judge to order its sentence to run concurrently or consecutively with a future state sentence, the court lacked the authority in the absence of statutory authorization.  See United States v. Donoso, 521 F.3d 144, 146-49 (2d Cir. 2008) (per curiam); United States v. Smith, 472 F.3d 222, 225-27 (4th Cir. 2006); Romandine, 206 F.3d at 737-39; United States v. Quintero, 157 F.3d 1038, 1039-40 (6th Cir. 1998); United States v. Clayton, 927 F.2d 491, 492 (9th Cir. 1991).  For these reasons, the rule in Setser was not "dictated" by existing precedent that recognized a federal sentencing court's traditional discretion.  See Caspari v. Bohlen, 510 U.S. 383, 393-95 (1994) (examining the "experience of the lower courts" when analyzing whether a rule was a development over which reasonable jurists could disagree).  Accordingly, the rule is "new" for Teague purposes.

Because Setser establishes a new rule, Hopkins may only invoke the rule on collateral attack if: (1) the new rule places certain kinds of criminal conduct beyond the

8

Even if counsel's failure to advocate for a concurrent sentence was ineffective, Hopkins has not shown prejudice, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the sentencing context, Hopkins must show there was a reasonable probability that "the deficient performance affected [his] sentence." United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007) (citing Glover v. United States, 531 U.S. 198, 203-04 (2001)). A "totally speculative" harm, Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999), or the "mere possibility" of receiving a concurrent sentence, see Prewitt v. United States, 83 F.3d 812, 818-19 (7th Cir. 1996), does not demonstrate prejudice.

Here, we cannot say that there exists a "reasonable probability" that the District Court would have imposed a concurrent sentence even if counsel had asked for it. Strickland, 466 U.S. at 694. While the violent nature of the conduct underlying the state offenses enhanced Hopkins's federal sentence, the state and the federal convictions were for entirely different crimes. The state convictions related to the shooting and Hopkins's

power of the criminal law-making authority to proscribe; or (2) the new rule is a "watershed rule[ ] of criminal procedure" that "alter[s] our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." Teague, 489 U.S. at 311 (emphasis in original) (internal quotation marks omitted). Setser plainly falls outside of the first exception as it dealt solely with a district court's sentencing discretion. As for the second exception, "[t]o say that this exception is extremely narrow is to understate the issue." Lloyd v. United States, 407 F.3d 608, 614 (3d Cir. 2005). To meet the exception, Hopkins must show that Setser "requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'" Teague, 109 U.S. at 307. The rule from Setser, which is not constitutionally derived, does not meet this high bar. Accordingly, the rule from Setser is not retroactive and Hopkins may not rely on it for relief under § 2255.

9

possession of the firearm, whereas the federal conviction related only to the crack cocaine. Because it is likely that a federal sentencing court would have wanted to ensure that Hopkins was separately punished for these separate offenses, it is likely that the court would have ordered its sentence to run consecutive to the future state sentence.

Moreover, a sentencing court would likely have found a consecutive sentence appropriate here in light of the nature of Hopkins's conduct and criminal history. As the sentencing court noted, Hopkins's crimes were violent, he had previously escaped from the Work Release Center, he had been undeterred by previous punishments, and he presented a serious risk of recidivism. Thus, Hopkins would have likely received a consecutive sentence even without counsel's alleged error and he cannot show that he was prejudiced by his counsel's failure to request a concurrent sentence.

## IV

For all of these reasons, we will affirm.